**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0293n.06
Filed: April 20, 2009

No. 08-4361

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| EARLUS LEON WILLIAMS, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before: BOGGS, Chief Judge; MOORE and SUTTON, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** At a hearing on August 21, 2008, defendant-appellant Earlus Williams admitted that he had violated the terms of his supervised release, and the district court found him to be in violation of his supervised-release conditions. On October 8, 2008, the district court sentenced Williams to nine months of incarceration for his violations. Williams appeals his supervised-release revocation sentence on the ground that his decision to waive a revocation hearing was not knowing, intelligent, and voluntary because the district court failed to explain fully the rights that Williams was waiving.

## I. BACKGROUND

In April 1990, Williams was charged in the United States District Court for the Northern District of Ohio with being a felon in possession of a firearm, possessing cocaine with intent to distribute, and possessing a firearm in relation to a drug-trafficking offense. On December 17, 1990,

Williams pleaded guilty to possessing cocaine with intent to distribute and to possessing a firearm in relation to a drug-trafficking offense. The government dismissed the count that charged Williams with being a felon in possession of a firearm. On January 28, 1991, the district court sentenced Williams to 228 months of incarceration and three years of supervised release.

Williams was released from prison and began to serve three years of supervised release on September 16, 2006. In April 2008, Williams's probation officers requested that a warrant be issued and alleged that Williams had violated his supervised release by failing to maintain a stable residence, failing to participate in drug/alcohol aftercare, failing to report to scheduled visits with probation officers, and failing to submit monthly supervision reports on time. A second request for supervision modification also alleged that Williams failed to participate in the Code-A-Phone testing program. In June 2008, Williams signed a modification to his supervised release waiving a hearing and requiring him to live in a Community Corrections Center (Oriana House) for 60 days.

On June 20, 2008, Williams began his residence at Oriana House. However, a second request for a summons filed on July 15, 2008, alleged that Williams had been terminated from Oriana House on July 11, 2008, that he had tested positive for cocaine, that he had associated with an individual who was on parole, and that he failed to attend his drug/alcohol aftercare counseling sessions. This request explained that when Williams was admitted to Oriana House, he began to have chest pain and was admitted to the hospital, where he remained for ten days. Upon discharge from the hospital, Williams requested a medical bed from Oriana House. Oriana House refused to readmit Williams because they could not provide him with a medical bed and because he could not give them a medical release stating that he did not need 24-hour nursing care. At a hearing on August 21, 2008, Williams admitted to these violations and waived his right to a hearing regarding the violations. On

2

September 19, 2008, Williams signed a document waiving his right to a hearing and agreeing to participate in a location-monitoring program for three months. On September 24, the district court issued an order requiring Williams to participate in the location-monitoring program as a condition of his supervised release.

However, at a hearing held on October 8, 2008, the district court learned that Williams had refused to participate in the location-monitoring program. The district court reviewed the history of Williams's case, noting that Williams had committed a number of violations and that the district court had tried to resolve these violations without incarceration. The district court stated that it had tried to avoid incarcerating Williams in part because of his medical condition despite the fact that the court had never received medical documentation regarding the extent of this medical condition and its effect on Williams's life. Williams admitted that he had refused to have the location-monitoring device attached and agreed to waive a hearing in connection with this new supervised-release violation. The district court noted that the violation was grade C and that Williams had a criminal history level of VI, so the guidelines range was 8 to 14 months of incarceration. After hearing from Williams, the district court sentenced Williams to 9 months of incarceration, with no additional supervised release.

Williams filed an untimely notice of appeal, but the district court granted his motion to extend time to file an appeal, allowing him to file his notice of appeal late. On appeal Williams makes one argument, that his decision to waive his right to a full revocation hearing was not knowing, intelligent, and voluntary, because the district court failed to inform Williams sufficiently at the hearing on August 21, 2008, of the rights that he was waiving.

## II. ANALYSIS

### A. Standard of Review

When a district court revokes an individual's supervised release, we review that decision for abuse of discretion, its fact findings for clear error, and its legal conclusions de novo. *United States v. Kontrol*, 554 F.3d 1089, 1091-92 (6th Cir. 2009). We review de novo the district court's conclusion regarding the mixed question of law and fact whether a waiver was knowing, intelligent, and voluntary. *See United States v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007); *Lott v. Coyle*, 261 F.3d 594, 610 (6th Cir. 2001). Neither Williams nor his counsel made a contemporaneous objection raising the issues discussed here. However, because we conclude that Williams is not entitled to relief under any standard of review, we need not decide whether plain-error review applies.

### B. Waiver of Revocation Hearing

Federal Rule of Criminal Procedure 32.1 provides the procedures that a court must follow when it is revoking or modifying a defendant's term of supervised release. This rule states that at an individual's first appearance related to a supervised-release violation, the judge must tell the individual what the alleged violation is, that the individual has a right to counsel, and that the individual has a right to a preliminary hearing if he or she is being held in custody. Fed. R. Crim. P. 32.1(a)(3). Rule 32.1 further provides that unless the individual chooses to waive a revocation hearing, such a hearing must be held within a reasonable time. Fed. R. Crim. P. 32.1(b)(2). This hearing must include written notice of the violation; disclosure of evidence against the individual; the opportunity to appear, present evidence, and question witnesses; notice of the right to counsel, and an opportunity to make a statement and present mitigating evidence. Fed. R. Crim. P. 32.1(b)(2)(A)-(E).

4

Williams argues that the district court violated his due-process rights by failing to conduct a sufficient inquiry to determine whether his waiver of his right to a revocation hearing was knowing, intelligent, and voluntary. At Williams's initial hearing, the district court conducted the following colloquy:

> THE COURT: All right. Mr. Williams, do you understand that if you admit to these violations you will effectively be pleading guilty to them?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. And that means that the Court will therefore have a factual basis to find you in violation of your terms of supervised release?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And that ultimately the Court will have to decide what the appropriate sanction would be, based on those violations. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. Do you understand that normally you would have a right to a hearing in connection with these charged violations, at which the government would have to present proof of the violations?
>
> THE DEFENDANT: I understand now.
>
> THE COURT: All right. And so do you understand that by admitting to the violations you are waiving your right to a hearing on them?
>
> (The defendant spoke with counsel off the record.)
>
> THE DEFENDANT: Yes.
>
> THE COURT: And is that what you want to do?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: All right. So you admit to these for separate violations: Failure to participate in the community corrections center, use of illegal substances, criminal

association and failure to maintain stable housing, and failure to participate in drug and alcohol aftercare.

THE DEFENDANT: Yes.

Hr'g Tr. Aug. 21, 2008, at 3-4. Williams was represented by counsel, and his counsel was present during this hearing and colloquy.

Although it is not controlling, a recent unpublished order of this court stated that "[i]deally, a court [at a supervised-release violation hearing] will advise an accused of the rights waived and the consequences of the waiver, but revocation proceedings are less formal than criminal prosecutions and no formal waiver colloquy is required." *United States v. Rhoad*, 102 F. App'x 918, 919 (6th Cir. 2004) (unpublished order); *see also United States v. Dodson*, 25 F.3d 385, 388 (6th Cir. 1994) ("Although revocation of probation is not part of a criminal prosecution, and thus the full panoply of due process protections accorded a defendant in such a proceeding do not apply to a revocation proceeding, the loss of freedom embodied in the revocation of probation constitutes a deprivation of a defendant's liberty."). The *Rhoad* court further explained that we should consider the totality of the circumstances when deciding whether a revocation-hearing waiver was knowing, intelligent, and voluntary. *Id.* Other circuits have taken a similar approach and have refused to require formal procedures like those that Rule 11 requires in connection with guilty pleas. *See United States v. Hodges*, 460 F.3d 646, 651-52 (5th Cir. 2006); *United States v. Gibbs*, 228 F. App'x 639, 639 (9th Cir. 2006) (unpublished memorandum) (holding that record did not show voluntary or intelligent waiver); *United States v. Farrell*, 393 F.3d 498, 500 (4th Cir. 2005); *United States v. Correa-Torres*, 326 F.3d 18, 23 (1st Cir. 2003); *United States v. LeBlanc*, 175 F.3d 511, 515-17 (7th Cir. 1999); *United States v. Pelensky*, 129 F.3d 63, 67-68 (2d Cir. 1997).

6

Considering the totality of the circumstances, we conclude that Williams's waiver was knowing, intelligent, and voluntary. The district court failed to enumerate the exact rights and procedures to which Williams would be entitled at a revocation hearing. In the interest of ensuring that waivers of the important rights protected by Rule 32.1 are knowing, intelligent, and voluntary, we encourage district courts to inform defendants regarding the rights contained in Rule 32.1(b)(2)(A)-(E). The fact that the district court failed fully to do so here, however, does not establish that Williams's plea lacked the features of a knowing, intelligent, and voluntary waiver. Instead, the totality of circumstances here indicates the contrary. Williams was represented by counsel throughout the revocation proceedings, and the district court clearly informed him that he had a right to a hearing on the alleged violations. Additionally, after waiving his right to a hearing orally, Williams signed a waiver in which he agreed to submit to location monitoring. Record on Appeal ("ROA") at 32-33 (Waiver of Hr'g, Sept. 19, 2008). Williams signed a similar waiver a few months earlier when he agreed to waive a revocation hearing and to live at a Community Corrections Center for 60 days. ROA at 21 (Waiver of Hr'g, June 5, 2008).

After the August hearing at which the quoted colloquy took place, the district court ordered Williams to submit to location monitoring as part of his supervised release. When Williams refused location monitoring and came before the court again, the Williams admitted that he had violated the conditions of his supervised release and waived his right to a hearing on this new violation. In accepting this waiver, the district court conducted an inquiry similar to the one that it did in August. Hr'g Tr. Oct. 8, 2008, at 8-9. However, Williams does not mention or complain of this waiver in his appellate brief. Reviewing the totality of the circumstances, we conclude that although the district court failed to enumerate every right that Williams was waiving, his waiver was knowing,

intelligent, and voluntary. In reaching this conclusion, we do not express an opinion about what circumstances would lead us to conclude that a waiver was not knowing, intelligent, and voluntary. In this case, Williams was represented by counsel throughout the entire revocation proceeding, there is no evidence that Williams was under any undue influence or pressure, and the district court clearly addressed Williams regarding his waiver. Accordingly, we hold that the district court did not err in the circumstances of this case in accepting Williams's waiver of a full supervised-release revocation hearing.

## III. CONCLUSION

We **AFFIRM** the district court's judgment.