NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0388n.06

No. 14-3256

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 29, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| DARRYL C. PIPPIN, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:    SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. Darryl Pippin appeals the revocation of his supervised release. Pippin was on supervised release from federal custody when he committed a new federal crime. He was arrested on new charges and pled guilty to them. While Pippin was being held on the new charges, his probation officer filed a violation report based on Pippin's commission of a new crime while on supervised release. The district court decided to address the supervised release violation at the same time as Pippin's sentencing for the new charges. At the hearing, the court sentenced Pippin to consecutive sentences of 57 months' imprisonment for the new charges and 37 months' imprisonment for the supervised release violation. Pippin appeals, arguing that the revocation proceedings did not comply with Federal Rule of Criminal Procedure 32.1(b). Because Pippin did not object at the hearing, his claims are reviewed for plain error. And

because Pippin has not shown that the error affected his substantial rights, the judgment of the district court is affirmed.

Pippin was arrested by the Federal Bureau of Investigation on June 25, 2013, on drug charges. At the time, Pippin was serving a term of supervised release imposed for a previous violation of supervised release which had been imposed for a 2001 drug conviction. At the time of his arrest, Pippin was serving supervised release on prior charges.

Pippin's probation officer submitted a Violation Report to the district court on July 2, advising the court of Pippin's arrest on drug charges and recommending that a warrant issue for Pippin's arrest on the supervised release violation. The district court did not act on the report for several months. Meanwhile, in the drug case, Pippin pled guilty to possession of a controlled substance with intent to distribute and three counts of use of a communication facility to further drug trafficking on December 11. At the plea colloquy, Pippin acknowledged understanding that he could face additional penalties based on his supervised release status. A few days later, on December 17, the district court issued an order regarding the violation report, stating, "The Court will address this violation at the time of sentencing [for the drug charges]."

On March 5, 2014, the district court held a hearing. At this hearing, the district court first addressed Pippin's sentence for the drug charges. Pippin had a Criminal History Category III and a base offense level of 23, after receiving a two-level reduction for acceptance of responsibility, a one-level reduction for a timely guilty plea, and a two-level reduction for substantial assistance. After calculating the Guidelines range for the drug charges, the district court observed that Pippin "was on supervised release when he committed this offense, and so, I will be taking that up as part of my sentence. So counsel can address that, along with their remarks on the sentence for the underlying offense." Then Samuel Amendolara, Pippin's lawyer

for the drug charges, spoke. He noted that Pippin had accepted responsibility, that family and friends had written in support, that Pippin was lawfully employed when he committed the offense, and that Pippin was remorseful. The district court then inquired, "Well, so, Mr. Amendolara, do you have anything you want to say regarding the supervised release?" This exchange followed:

> MR. AMENDOLARA: Well, Your Honor, what can I say? The -- he was, in fact, reporting. He was, in fact, but for being involved in these acts --
> THE COURT: Well, the problem is, the record shows that -- that Mr. Pippin started getting involved in this current drug trafficking while he was still in prison on the last drug trafficking and that he resumed it as soon as he got out, so it was -- it was a continuous violation. That's the problem.
> MR. AMENDOLARA: That is the problem.
> THE COURT: You don't usually see that.
> MR. AMENDOLARA: He had a relationship with an individual from Youngstown who he had met, he had continued his relationship. That individual, the Court's I think well aware of, reached out to him. He did engage in conduct with that individual, you're correct, and it did last the span of -- while he was getting released and while on supervised release. He knows what he did was wrong.
> THE COURT: Okay. Thank you. All right. Mr. Pippin, anything you would like to say, sir?
> THE DEFENDANT: I just want to apologize for everything I did and, you know, I messed up again. And I want to apologize to my family and the courts. And I just want to go ahead and do what I got to do and get out and live my life and work a good, hard job. I already got jobs and everything lined up. And this time, I ain't going to mess up no more.
> THE COURT: All right. Thank you, sir.

The prosecution then spoke, arguing that Pippin's supervised release violation "smack[ed]" of "disrespect to the Court" and recommending a consecutive sentence.

The district court sentenced Pippin to 57 months' imprisonment for the possession with intent to distribute charge, and 48 months' imprisonment for the three counts of use of a communications facility to further drug trafficking, to run concurrently. The district court then sentenced Pippin to 37 months' imprisonment on the supervised release violation, to run consecutively. The court opined, "I could do more," such as "a sentence even above the

advisory range," but that if 94 months "doesn't get you to turn things around, another year or two won't have any affect either." After advising Pippin of his right to appeal, the court asked if either party had any objections, or anything further to say. There were no objections.

On appeal, Pippin argues that he was not given a preliminary hearing or a revocation hearing and thus was deprived of the due process rights secured by Federal Rule of Criminal Procedure 32.1. He also argues that the district court's failure to comply with Rule 32.1 rendered his sentence procedurally unreasonable.

Pippin was not entitled to a preliminary hearing under Rule 32.1(b)(1) because he was not in custody for a supervised release violation. Rule 32.1(b)(1) provides for a preliminary hearing when a defendant is "in custody for violating a condition of probation or supervised release." Fed. R. Crim. Pro. 32.1(a)(1) & (b)(1)(A). But the preliminary hearing provision does not "expressly appl[y] to persons *already* in custody for a separate offense." *United States v. Vasquez-Perez*, 742 F.3d 896, 899 (9th Cir. 2014) (emphasis in original); *see also United States v. Sackinger*, 704 F.2d 29, 30 (2d Cir. 1983). Pippin was already in pretrial custody for a separate offense—possession with intent to distribute—and not for violating the conditions of his supervised release. Indeed, Pippin's supervised release violation was his commission of a new crime while on supervised release. Pippin was arrested on the drug charges on June 25 and the violation report was not filed until July 2. Because Pippin was already in custody, he was not entitled to a Rule 32.1(b)(1) preliminary hearing.

But while Pippin was not entitled to a Rule 32.1(b)(1) preliminary hearing, he was entitled to a revocation hearing under Rule 32.1(b)(2), notwithstanding the Government's sweeping and unsupportable argument to the contrary. A revocation hearing must be provided unless waived. Fed. R. Crim. Pro. 32.1(b)(2); *cf. United States v. Williams*, 321 F. App'x 486,

489 (6th Cir. 2009). These hearings "must include written notice of the violation; disclosure of evidence against the individual; the opportunity to appear, present evidence, and question witnesses; notice of the right to counsel, and an opportunity to make a statement and present mitigating evidence." *Williams*, 321 F. App'x at 489 (citing Fed. R. Crim. P. 32.1(b)(2)(A)-(E)). On appeal, Pippin argues that the record does not reflect that he received a copy of the violation report or other notice of the revocation charges, but he stops short of alleging that he had no actual notice. He also asserts that he was not provided with counsel for the revocation proceedings—despite Mr. Amendolara's presence at the hearing—based on the failure of any attorney to file a notice of appearance on the docket. Finally, he argues that the district court did not advise him at the hearing that he could be sentenced to a consecutive sentence for the supervised release violation, which denied him an opportunity to address the supervised release violation.

Even assuming that Pippin's assertions are true and that he did not receive a proper Rule 32.1 hearing, Pippin has not shown that the district court committed plain error. Because Pippin did not object in the district court, the district court's sentence is reviewed for plain error. *See United States v. Polihonki*, 543 F.3d 318, 322–23 (6th Cir. 2008). Among other things, this standard requires Pippin to show prejudice, i.e., "a reasonable probability that the error affected the outcome." *United States v. Marcus*, 560 U.S. 258, 262 (2010). Pippin has not made that showing.

Pippin does not argue that he would have contested his guilt of the violation. That would be a near-impossible task. The terms of Pippin's supervised release prohibited him from committing new crimes and Pippin had pled guilty to several new offenses. These offenses

included possession with intent to distribute, a crime for which courts are required to revoke supervised release. *See* 18 U.S.C. § 3583(g).

Instead, Pippin's grievance concerns his sentence: he received for the supervised release violation a consecutive sentence, the possibility of which he was not notified of earlier. Pippin's argument has two prongs. Neither establishes prejudice. First, he argues that because he was not notified promptly, he pled guilty to the drug charges without knowing that he could receive a consecutive sentence for the supervised release violation. That point is moot; Pippin has not appealed his guilty plea. Second, Pippin argues that because he did not know about the possibility of a consecutive sentence, he did not know that he should have or could have presented mitigating evidence concerning the supervised release violation at the hearing. But Pippin had an opportunity to present mitigating evidence and in fact both he and his counsel did so. On appeal, Pippin does not explain what he would have done differently, what new evidence he would have presented, or what new arguments he would have made in mitigation. Thus, Pippin has not shown that any failure to comply with Rule 32.1 prejudiced him.

Pippin's challenge to the procedural reasonableness of his sentence fails for the same reasons.

The judgment of the district court is affirmed.