NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0476n.06

No. 14-5727

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 16, 2016
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,                    )
                                             )
        Plaintiff-Appellee,                  )
                                             )
v.                                           )        ON APPEAL FROM THE
                                             )        UNITED STATES DISTRICT
JOHN JOSEPH NESLER,                          )        COURT FOR THE WESTERN
                                             )        DISTRICT OF TENNESSEE
        Defendant-Appellant.                 )
                                             )
                                             )

BEFORE:    BOGGS and ROGERS, Circuit Judges; and BERG, District Judge.[*]

        BOGGS, Circuit Judge.  Defendant John Nesler appeals the revocation of his supervised

release on the ground that he was not accorded the rights due at a revocation hearing.  Based on

evidence that he possessed child pornography after his release from imprisonment, Nesler

pleaded guilty on May 12, 2014 to violating 18 U.S.C. § 2252.  On May 20, 2014, in separate

proceedings, Nesler admitted to violating the terms of his supervised release and waived his right

to a supervised-release-revocation hearing.  In a follow-up proceeding on June 12, 2014, during

which he was sentenced for the supervised-release violation, Nesler questioned some of the

evidence against him.  He later filed unsuccessful motions to withdraw both pleas.  We affirm

the revocation of Nesler's supervised release because the district court's continued acceptance of

Nesler's plea and waiver at the June 12 proceeding was not plain error.

_____

[*] The Honorable Judge Terrence Berg, United States District Judge for the Eastern District of Michigan, sitting by designation.

I

In 2012, Nesler was arrested for violating the same two provisions of the possession-of-child-pornography statute for which he was on supervised release. *See* 18 U.S.C. § 2252(a)(2), (4)(B). In that case ("the 2012 case"), Nesler pleaded guilty on May 12, 2014 to one count and the other was dropped.

Eight days later, the district court in this case held the first of two proceedings to sentence Nesler for violating the terms of his supervised release. After one of Nesler's two counsel explained his recent guilty plea in the 2012 case, the court conducted a colloquy. Nesler affirmed that his admission to having violated the terms of his supervised release was willing, based on his factual guilt, and was not induced by promise or threat. He indicated that he understood the rights he was forgoing: "a trial [at] which [he] would be presumed innocent," "counsel to represent [him] throughout those proceedings," seeing, hearing, and cross-examining witnesses against him, testifying if he so desired, and presenting a defense. The court explained that the maximum sentence for his violation was 48 months of imprisonment. Nesler's counsel objected, suggesting for the first time that the maximum sentence was 24 months. To "give everybody a chance to take a look at it," the court instructed the parties to brief the issue and scheduled a follow-up proceeding.

At the second proceeding three weeks later, the court acknowledged that, in fact, Nesler's supervised-release violation carried a mandatory minimum penalty of 5 years of imprisonment. *See* 18 U.S.C. § 3583(k); 42 U.S.C. §§ 16911(5)(A)(iii), 16913. Nesler then addressed the court. He voiced skepticism about some of the evidence presented against him in both his 2007 case (where he pleaded guilty, had served several years of imprisonment, and was on supervised release) and the ongoing 2012 prosecution. The court pressed the issue:

2

| | |
|---|---|
| THE COURT: | Right. I mean, I hear what you're saying. |
| THE DEFENDANT: | I'm sorry to give you all that, but I'm just explaining. |
| THE COURT: | It doesn't really -- |
| [Government]: | Your Honor, my only comment would be that, of course, there's been guilty pleas entered in all of his cases. We have put the proof on necessary to prove the violation in this case. |
| THE COURT: | Well, the guilty plea was entered on -- it was entered the 27th [sic]. I've got to remember my dates here. |
| [Government]: | Something like that, your Honor. I'd have to look. |
| THE DEFENDANT: | I been bucking ever since, even prior before that. I been trying to get someone to hear me about it. |
| THE COURT: | And I hear what you're saying. I'm concerned about whatever you want to bring up but whether or not there -- this is something that reflects on the receipt of that guilty plea. Do you see what I'm saying? . . . . Because I think what you're saying is that as to the basis in fact for the plea before Judge Anderson that you think that there -- I don't know whether you're right or wrong about that -- that you think that there are discrepancies in the evidence -- |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | -- and that there, while . . . there is evidence to support your plea, there is not evidence to support all of the asserted relevant conduct. Is that what you're saying? |
| THE DEFENDANT: | Yes, sir. From 2007 to now. |
| THE COURT: | Well, now anything that occurred in 2007 . . . would have to have been appealed. . . . So, in so many ways those are not matters that we would re-examine; and that's also been addressed in some of the papers that have been filed to the Court. To the degree that you're saying that . . . -- and I don't quite -- I don't think I'm hearing that but to the degree you're saying that there's an inadequate basis in fact for your plea before Judge Anderson, that's something before Judge Anderson. Is that what you're saying? |
| THE DEFENDANT: | Yes, sir. |

Turning to counsel, the court tried to clarify Nesler's concerns. Counsel gave the impression that Nesler took issue mainly with his 2007 conviction and that there was no reason to question his guilty plea in the 2012 case or his admission at the earlier proceeding to having violated the terms of his supervised release.

3

The court also referred to two pro se communications that it had received from Nesler shortly before the second proceeding. Although difficult to follow, they lay out Nesler's criticisms of the evidence in both the 2007 and 2012 cases. Among other attachments, one of the communications includes a letter from the director of Tennessee's Consumer Assistance Program to Nesler's counsel. It relayed Nesler's assertion that the evidence did not connect him to all of the conduct underlying his indictments and that counsel was aiding the prosecutor by "ignoring these discrepancies." When the court mentioned the communications, counsel averred that they felt capable of continuing to represent Nesler. The court then found Nesler guilty of violating the terms of his supervised release based on his earlier admission and sentenced him to 5 years of imprisonment.

Toward the end of the proceeding, the court grew concerned when Nesler expressed confusion about ongoing proceedings in the concurrent case. At a sidebar, defense counsel reassured the court that despite his pro se communications, Nesler was "satisfied" with their guidance, and the government reminded the court that he had already pleaded guilty in the 2012 case. The court then asked Nesler how he felt about his attorneys. He replied, "I have talked to them, but we're on two different roads," and described some of the evidence from the 2007 case that he found troubling. As it concluded the proceeding, the court acknowledged that Nesler "ha[d] some factual issue that may be addressed in . . . proceeding[s for the 2012 case]," where he had pleaded guilty but had not yet been sentenced.

Three months after the second proceeding, Nesler filed the first of several pro se motions to withdraw his pleas in both cases. Counsel in the 2012 case later filed a motion to withdraw Nesler's plea, which the district court denied. It noted that the motion seemed to be "a simple case of [Nesler] having second-thoughts about his decision" to plead guilty. In May 2015, the

court entered a judgment based on Nesler's guilty plea and sentenced him to 120 months of imprisonment. Soon afterward, the district court in this case denied Nesler's motions because he had "articulated no basis for relief" and "[t]he factual basis for th[e] guilty plea remain[ed] in place."

## II

## A

Nesler contends that his admission to having violated the terms of his supervised release was invalid and that he was denied due process when the court continued to rely on it at the second proceeding. When a defendant admits to a supervised-release violation and waives the rights to which he would be entitled at a revocation hearing, *see* Fed. R. Crim. P. 32.1(b), we review de novo the mixed question of law and fact whether that waiver was "knowing, intelligent, and voluntary." *United States v. Williams*, 321 F. App'x 486, 488–89 (6th Cir. 2009).

Yet Nesler did not preserve a claim of that error. To do so, a party must "object[] to the court's action" and provide a "grounds for that objection." Fed. R. Crim. P. 51(b). As we have stated, a defendant must "object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection." *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) (quoting *United States v. LeBlanc*, 612 F.2d 1012, 1014 (6th Cir. 1980)). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010). The specificity requirement "afford[s] the trial judge an opportunity to remedy any claimed error and . . . afford[s] the government an opportunity to come forward with evidence relative to the claim." *United States v. Prater*, 766 F.3d 501, 506 (6th Cir. 2014) (quoting *United States v. Bryant*, 480 F.2d 785, 792 (2d Cir. 1973)).

At the second proceeding, according to Nesler, he "told the court he was trying to withdraw his plea." Appellant Br. at 5. But he does not explain why the court should have interpreted his complaints as an attempt to withdraw his waiver of the right to a revocation hearing. Nesler's frustrations with some of the evidence in the 2007 and 2012 cases did not form an objection sufficiently specific to provide the court or the government an opportunity to address the legal point he now makes. *See Bostic*, 371 F.3d at 871. In fact, he accomplished the opposite when he agreed with the district court's statement that his grievances did not challenge the "basis in fact for [his] plea" in the 2012 case. Under those circumstances, the court could not have been expected to detect an attempted withdrawal of Nesler's earlier waiver. And when the court invited "any objections not previously raised," defense counsel had none. *See id.* at 872–73. Since counsel assured the court that Nesler was satisfied with their representation and did not attempt to withdraw his earlier waiver, and Nesler's vague misgivings with some of the evidence in the 2007 and 2012 cases did not clearly indicate otherwise, he has forfeited the issue of the validity of his waiver.

We therefore review only for plain error. *See United States v. Dumas*, 412 F. App'x 835, 836 (6th Cir. 2011); *see also United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004) ("Plain error review applies even if the forfeited assignment of error is a constitutional error.") The defendant bears the burden of showing an "(1) error, (2) that is plain," *United States v. Lalonde*, 509 F.3d 750, 757-58 (6th Cir. 2007)—in other words, a "clear" or "obvious" error, *United States v. Olano*, 507 U.S. 725, 734 (1993). The error must (3) "affect[] substantial rights. If all three conditions are met, an appellate court may exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or reputation of judicial proceedings." *Lalonde*, 509 F.3d at 757–58. As we have stated the rule, "the plain error doctrine

6

is to be used sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice." *United States v. Critton*, 43 F.3d 1089, 1094 (6th Cir. 1995).

B

Although "defendants have fewer rights in parole revocation hearings than in criminal trials," *Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 776 (6th Cir. 2008), revocation hearings carry certain "minimum requirements of due process," including the opportunities to "present witnesses" and to "cross-examine adverse witnesses," *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973). These rights apply with equal force at a supervised-release-revocation hearing. *See United States v. Johnson*, 356 F. App'x 785, 791 (6th Cir. 2009); *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991). They are also codified in Federal Rule of Criminal Procedure 32.1, which allows the accused individual the option of "waiv[ing]" the revocation hearing and its attendant rights.

Waiver of a supervised-release-revocation hearing "need only be knowing and voluntary under the totality of the circumstances." *United States v. Melton*, 782 F.3d 306, 311 (6th Cir. 2015). Examining a revocation hearing in its entirety, we must deduce whether the district court facilitated a knowing and voluntary waiver by "expos[ing] the defendant's state of mind on the record through personal interrogation." *McCarthy v. United States*, 394 U.S. 459, 467 (1969). As with a guilty-plea colloquy, "[a] defendant's statements on the record . . . that he or she understands the nature and the consequences" of a revocation-hearing waiver "provide strong evidence" that it was intelligent and knowing. *Boyd v. Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004). And like other constitutional rights, the due-process rights afforded at a supervised-release-revocation hearing can be waived even without an express statement to that effect. *See, e.g.*, *United States v. Lawrence*, 735 F.3d 385, 437 (6th Cir. 2013) (*Miranda* rights); *Hodge v.*

*Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (right to testify); *United States v. Magouirk*, 468 F.3d 943, 947 (6th Cir. 2006) (right to appeal a sentence).

According to Nesler, his waiver at the first proceeding was not knowing and voluntary because three weeks later, at the second proceeding, he questioned some of the evidence supporting the 2012 indictment. However genuine Nesler's later evidentiary complaints may have been, they do not lead us to question whether his earlier stipulation was made knowingly and voluntarily. *See id.* at 312. "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quotations omitted). During the colloquy, the district court made clear to Nesler the rights that he was forfeiting by pleading guilty. *See* Fed. R. Crim. P 32.1(b)(1). When prompted, Nesler confirmed that his plea was voluntary and that he was "pleading guilty because [he was] . . . guilty of the violation as set out in the petition." Nesler did not explicitly state during the first proceeding that he was waiving his right to a hearing. Nonetheless, Nesler's affirmative responses to the court's questions during that proceeding clearly demonstrate a knowing and voluntary waiver.

That leaves the question whether intervening events at the second proceeding, considered in their totality, so undercut the "knowing and voluntary" nature of Nesler's statements at the first proceeding that the court's acceptance of his waiver was an obvious error. Counsel assured the court that Nesler continued to waive his right to a hearing and Nesler at one point specifically agreed that he was not challenging the sufficiency of evidence to support his guilty plea in the 2012 case. Nesler subsequently appeared to claim that there was "an inadequate basis in fact for [his] plea" in the 2012 case and later stated that he was not physically present at the location of some the culpable conduct on the date alleged in the indictment. Nesler also vaguely expressed

disagreement with counsel's strategy. But he also reassured the court that he would continue to cooperate with counsel. A more careful response to Nesler's misgivings may have involved reaffirming the answers elicited during the original colloquy. However, the totality of these circumstances shows that the court did not plainly err when it accepted Nesler's admission to having violated the terms of his supervised release and waiver of his right to a revocation hearing.

As discussed, we reject Nesler's contention that his waiver of the right to a hearing should not have been accepted on account of his rambling expression of evidentiary concerns regarding his 2007 conviction and his plea in the 2012 case. But nowhere does he raise the argument made in the dissent that his waiver was unknowing and involuntary because of confusion at the first hearing regarding the penalty to which he could be exposed. Accordingly, he has waived this issue on appeal. *See United States v. Anderson*, 695 F.3d 390, 402 (6th Cir. 2012). In any event, the totality of circumstances reflects that Nesler's waiver was not made in ignorance of its consequences. Although the colloquy took place at the first hearing, Nesler was fully aware by the second hearing of the mandatory minimum penalty that his violation carried, and agreed that he was satisfied with counsel, who assured the court that Nesler's vague agitations did not undermine his waiver. Although the court's interrogation over both hearings was not the embodiment of clarity, its acceptance of the waiver was not an obvious error that affected the proceedings' fairness.

Our holding moots Nesler's argument that he was denied the opportunity to present and confront witnesses. By waiving the right to a revocation hearing, an individual on supervised release forgoes the "opportunity to appear, present evidence, and question any adverse witness." Fed. R. Crim. P. 32.1 (b)(2)(C); *see also Williams*, 321 F. App'x at 489. The court explained at

9

the colloquy during the first proceeding that Nesler was entitled to present evidence and cross-examine witnesses, and that by admitting to a supervised-release violation, he was abandoning those and other rights. Nesler did ask that the person who administered a polygraph test be called as a witness. Since the court did not plainly err by relying on Nesler's earlier revocation-hearing waiver, neither did it err when it did not extend to him rights that he would have had at such a hearing.

III

Nesler also asks us to consider his claim that counsel was constitutionally ineffective. Generally, a defendant may not raise a claim of ineffective assistance on direct appeal because "there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Franco*, 484 F.3d 347, 354 (6th Cir. 2007). In exceptional cases, however, we will entertain such claims on direct review because "the record is adequately developed to . . . properly assess the merits of the issue." *United States v. Williams*, 612 F.3d 500, 508 (6th Cir. 2010). This is not such a case. Nesler's argument (that counsel acted contrary to his wishes by informing the court that he waived his right to a revocation hearing) would significantly benefit from further factual findings. *Cf. United States v. Wynn*, 663 F.3d 847, 850–51 (6th Cir. 2011) (record sufficiently developed when in response to motion to withdraw plea due to ineffective assistance, district court held a hearing at which both parties presented evidence on all issues later presented on appeal). Accordingly, this claim is premature and can be raised only in a post-conviction motion to vacate under 28 U.S.C. § 2255.

IV

For the reasons discussed above, we AFFIRM the district court's order revoking supervised release.

10

BERG, District Judge, Dissenting.

Because I view what happened at the two supervised release revocation proceedings differently from the majority, I respectfully dissent.

The district court held two proceedings to address the petition for revocation of supervised release, one on May 20, 2014 and a continued hearing on June 12, 2014. The majority's view is that Nesler's plea and waiver of his hearing rights that occurred during the May 20 proceeding continued to have legal effect during the second hearing on June 12.

I respectfully disagree because I do not think Nesler completed any guilty plea to the supervised release violation at the first hearing on May 20, and the waiver he made of his hearing rights was not valid because it was not made with knowledge of his possible sentence.

Likewise at the second hearing on June 12, Nesler did not admit to the supervised release violation. Instead, the government presented evidence showing that Nesler had entered a guilty plea to another offense as proof that he had violated his supervised release conditions. The district court did not permit Nesler to present any evidence in opposition during the second hearing, and Nesler did not personally waive his right to do so. Because Rule 32.1 of the Fed. R. Crim. Proc. entitled Nesler to present evidence in mitigation, I would reverse the district court's order revoking Nesler's supervised release, and remand for a new revocation hearing.

During the first supervised release violation hearing on May 20, 2014, the district court began by conducting a thorough colloquy in which Nesler was advised of his hearing rights and expressed his intention to admit to the violation. However, as the hearing continued, it became clear that neither the government nor defense counsel was certain as to the maximum sentence that Nesler was facing. Defense counsel maintained that the maximum sentence Nesler could receive was 24 months, while the district court and the government believed the maximum

sentence was 48 months. In pointing out this uncertainty the district court wisely advised the parties that the plea should not be taken if Nesler's maximum exposure was not clearly explained to him. The court stated:

> **THE COURT:** His lawyer is telling him it's 24 months and I'm telling him it's 48, that's not very helpful. And I can't tell you we think it might be 48, that's probably not the best way to do that either. I don't mind going ahead and going through the factual determinations as to whether or not the defendant wishes to plead guilty, but if he pleads guilty, he's going to have to plead guilty with the understanding that he may be sentenced to four years, we would reserve the final determination, but if that is going to affect his decision whether or not he wishes to plead guilty, then we shouldn't proceed.

Because neither side could say with certainty what Nesler's exposure was, the district court correctly suspended the proceedings before any guilty plea was taken, noting that the length of the possible sentence might well affect Nesler's decision as to whether it was in his interest to admit the violation or ask for a hearing. ("*[I]f* he pleads guilty, he's going to have to plead guilty with the understanding that he may be sentenced to four years . . .)

Realizing that the lack of information concerning Nesler's sentence exposure rendered any plea or waiver invalid, the Court told the parties they would have to stop the hearing, do some research and reconvene after the sentence question was answered:

> **THE COURT:** I think the best thing to do, and it is really not the -- the most expeditious thing is to go ahead and change the plea and then figure it out, which is terrible because the defendant is allowed to rely on the representation regarding the maximum sentence available in making his decision. If he believes it's two years, he might make one decision. If he believes it's four, he might make another. I'm sorry, guys, I think that has to be briefed. Also, the probation needs a chance to look it up, I need a chance to look it up and the government needs a chance to look it up. So we will come back. We have got time. We have got plenty of time.

Rather than completing what would have been an "unknowing" plea, in which Nesler would have been pleading guilty without knowing what the maximum sentence could be, the district court stopped the hearing and told the parties to look it up and come back.

Thus, the plea-taking process with its accompanying waiver of rights colloquy, begun on May 20, was never completed. The district court said as much when it pointed out that "the defendant is allowed to rely on the representation regarding the maximum sentence available in *making his decision*" and spoke of how knowledge of the possible sentence could affect Nesler's ability to "make one decision [or] . . . another." It is clear that no guilty plea was completed on May 20. The parties went back to the drawing board to figure out the maximum sentence that Nesler might receive, so that he could make an informed decision on whether he wished to plead guilty or contest the violation.

At the second violation hearing, held on June 12, 2014, it was revealed that Nesler actually faced a 60-month mandatory minimum sentence for violating his supervised release, a much greater sentence than the parties or the district court anticipated before. In the second hearing, the district court did not ask Nesler whether he still wished to waive his hearing and admit to the violation in light of the fact that he was facing a much higher, mandatory sentence. Instead, at the outset of this hearing, the government introduced as an exhibit the change of plea form showing that Nesler had pleaded guilty to a child porn possession offense. Because the supervised release violation was for committing another offense while on supervision, the government argued that the introduction of the change of plea form was "dispositive of the guilt issue," and Nesler's counsel agreed. Counsel and the district court then engaged in a lengthy discussion on the calculation of Nesler's sentence for the violation.

At no time during the second hearing did the district court ask Nesler if he wished to admit to the violation, nor did it ask him if he agreed to waive his right to a hearing. Both counsel and the district court seemed to be operating under the assumption that the change of plea form left "no dispute as to the facts." When the district court asked Nesler directly what his

position was, Nesler raised questions about some of the evidence supporting the charges to which he had recently pled guilty. The district court acknowledged that Nesler appeared to be raising discrepancies in the evidence concerning the "basis in fact" for the guilty plea that was the offense constituting his violation of supervised release conditions. But the district court did not permit Nesler to present any evidence or call any witnesses. Instead, the district court relied on Nesler's guilty plea in the underlying case to conclude that "the facts have been admitted" and adjudged Nesler guilty of the violation.

The rest of the hearing was primarily devoted to sentencing issues, and the district court imposed a sentence of five years. Near the end of the hearing, the district court was trying to clarify whether Nesler was satisfied with his counsel, but Nesler took the opportunity to continue to question the proof relating to the case in which he had pled guilty, and he appeared to be asking if he could present witnesses and evidence to rebut the charged violation:

> **THE DEFENDANT:** Did I not pass the polygraph-man test? Didn't I pass that? I went and took that test. Everybody else failed it in the whole class except me. I said I wouldn't fail it, and I didn't. Call the man up. I was trying to get him at least to be a witness. I can't get no – IT forensics let me look into the actual matter of the issues and then things might come out and look a little different. That's all I'm asking.

The procedures that a district court must follow when revoking or modifying a defendant's term of supervised release are set forth in Federal Rule of Criminal Procedure 32.1(b). That rule states:

> Revocation Hearing. Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:
>
> (A) written notice of the alleged violation;
>
> (B) disclosure of the evidence against the person;
>
> (C) an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear;

14

(D) notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and

(E) an opportunity to make a statement and present any information in mitigation.

Fed. R. Crim. P. 32.1(b)(2).

When the district court reconvened to address the supervised release violation on June 12, 2012, in light of the much greater sentence exposure that was not known at the time of the first hearing, it needed to give Nesler the opportunity to decide whether he wanted to make a knowing and voluntary admission to the supervised release violation, and waive his due process rights to a hearing, or whether he wanted to contest the violation and invoke his right to a hearing, to present evidence, and challenge the government's proof, as required by Rule 32.1(b)(2). What happened however, was that the district court allowed the government to present evidence of Nesler's having committed another offense while on supervised release (the change of plea form), declared Nesler's plea in the other case to be "dispositive," and dispensed with seeking a waiver, asking for an admission, or conducting a hearing. In the second proceeding, Nesler was neither advised that he could have a hearing, nor was he given the opportunity to present testimony and evidence, or allowed to offer anything in mitigation.

I recognize that district courts are not required to scrupulously follow the same plea-taking procedures of Fed. R. Crim. Proc. 11 when conducting supervised release violation hearings. *See United States v. Melton,* 782 F.3d 306, 311 (6th Cir. 2015). Instead, whether a defendant has knowingly and voluntarily admitted to a supervised release violation and waived the right to a hearing is considered under the "totality of the circumstances." *Id*. at 312. In *Melton,* the defendant argued – similarly to Nesler – that his admission to a supervised release violation was involuntary because the district court did not explicitly inform him of his full sentencing exposure. We affirmed the district court, and held that Rule 11 is not applicable to

revocation hearings, and that the defendant knowingly and voluntarily waived his rights when considering all the surrounding circumstances. The difference, however, between the present case and *Melton* is that the maximum term of imprisonment was known in *Melton,* and was set forth in a report prepared by a probation officer. While the district court in *Melton* may not have explicitly explained the potential penalty on the record, the defendant stated that he reviewed that report, discussed it with his attorney, and confirmed to the magistrate judge conducting the revocation hearing that he understood its contents. *Id.* at 312. In this case, by contrast, no one knew at the first hearing the maximum penalty Nesler was facing. Under the totality of these circumstances, I cannot conclude that Nesler knowingly and voluntarily waived his right to a revocation hearing at either the first or the second proceeding held before the district court.

Given that Nesler had in fact pled guilty to the underlying child porn offense, it is perhaps unlikely that he could have presented any evidence at a supervised release hearing capable of overcoming the proof that he had committed the violation. While Nesler attempted to withdraw the guilty plea that formed the underlying basis of the violation, that motion to withdraw the plea was denied by the district court, and that conviction has since been affirmed on appeal.[*] Even though remanding this case for a new hearing might well result in the same outcome, Fed. R. Crim. Proc. 32.1 entitled Nesler to certain procedural rights that were not accorded to him.

For these reasons, I would reverse and remand for a new revocation hearing.

---

[*] *See United States v. Nesler*, Case No. 15-5607 (6th Cir. June 27, 2016).