NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0275n.06

Case No. 18-4046

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 18, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| CALVIN MCPHERSON, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: MERRITT, THAPAR, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Calvin McPherson appeals his statutory maximum sentence for multiple violations of his terms of supervised release. McPherson admitted to those violations, but now argues his admissions were not knowing and voluntary. He likewise finds error in the district court allegedly considering pending charges in imposing his sentence. Seeing no plain error in the proceeding below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

While on supervised release following a prison term for bank fraud, McPherson twice tested positive for drug use. Those violations led the district court to order McPherson to reside at Oriana House, a drug treatment facility, for a period of therapy. Unfortunately, McPherson violated this order as well, leaving Oriana House after just two days.

These events, it turned out, were just the tip of the illegality iceberg. Before an initial hearing could be held on his supervised release violations, McPherson was arrested multiple times. The first arose out of a traffic stop by officers in Willoughby Hills. Smelling marijuana in the vehicle, the officers questioned the passengers. McPherson, who was one of the passengers, identified himself by using the name and date of birth of his brother, Charles. McPherson was then arrested for outstanding warrants in his brother's name. A small bag of cocaine was found in a cup holder in the vehicle, and loose marijuana was found throughout the vehicle. McPherson told officers that the crack cocaine was his. Once McPherson's fingerprints were processed, officers discovered his true identity—and that he had a federal warrant out for his arrest. McPherson was later charged with possession of crack cocaine, identity fraud, and forgery.

McPherson was arrested again a few months later in Cuyahoga County. At the time of his arrest, McPherson was in possession of a semi-automatic firearm. He again made false statements about his identity. Following charges of carrying a concealed weapon, having weapons while under disability, and falsification, McPherson pled guilty to the latter two offenses. He was sentenced to a two-year period of "community control supervision."

McPherson's crime spree continued. Less than two weeks later, he was arrested again in Cuyahoga County. Upon running McPherson's name, officers discovered an active warrant for his arrest related to a later-dismissed domestic violence charge. As officers questioned McPherson, they noticed him laboring to conceal something in his mouth. McPherson then spat out a small bag of crack cocaine. McPherson later pled guilty to drug possession in Cuyahoga County.

Days later, McPherson made an initial appearance before a federal magistrate judge regarding his original supervised release violation, leaving his court-ordered drug treatment at Oriana House. McPherson was provided with a copy of the report outlining the violation. The report explained that McPherson faced a maximum 36-month prison sentence if his supervised release was revoked. McPherson's attorney verified that McPherson had reviewed the report and understood the nature of the allegations detailed in it. The district court also explained the violation to McPherson and verified that he understood the allegations. McPherson then admitted to the violation.

A month later, a final revocation hearing was held. A few days before the hearing, a superseding violation report had been issued by the Probation Department outlining McPherson's additional violations. The report detailed the pending charges in Willoughby Municipal Court, as well as the numerous charges in Cuyahoga County to which McPherson had pled guilty. At the hearing, the details of these alleged violations were read in open court. The district court asked McPherson how he wished to proceed on the alleged violations in Cuyahoga County—excluding at that point the pending charges in Willoughby Hills. McPherson admitted to the violations in Cuyahoga County, and did not address the Willoughby Hills charges.

Although the Guidelines calculation recommended a sentence of up to 27 months, the government sought the statutory maximum: 36 months' imprisonment due to McPherson's "egregious violations." After giving a detailed description of all of McPherson's violations, the government noted that McPherson, despite his many chances, was "back violating and ha[d] a pending charge in Willoughby." The government referred to this offense as one McPherson "committed allegedly."

Accepting the government's recommendation, the district court sentenced McPherson to the statutory maximum of 36 months, finding the Guidelines range "completely insufficient" for McPherson's flagrant and repeated violations. While reciting a laundry list of reasons why McPherson deserved the statutory maximum, the district court made two brief references to the pending charges in Willoughby Hills. The first was in the context of chastising McPherson for his continued criminal conduct: "Obviously you continued to be involved in criminal behavior: The pending charges, possession of crack, identity fraud, forgery, in Willoughby Municipal Court, and of course your recent convictions that we just heard about." The second occurred when the court highlighted McPherson's use of his brother's name as an alias: "And getting back to identity fraud, lying about who you are, giving your brother's name. You can't admit that, you can't man up to that."

After imposing sentence, the district court gave McPherson an opportunity to make any comments or objections. None were made. McPherson filed a timely appeal.

## II. ANALYSIS

McPherson raises two issues on appeal: one, whether alleged procedural defects in his revocation hearing mean his admissions were not knowing and voluntary, and two, whether statements made by the district court concerning McPherson's pending charges in Willoughby Hills rendered the ensuing sentence procedurally unreasonable. McPherson, however, did not object in any respect during the proceedings below. When a party fails to object before the district court, that court is denied the opportunity expressly to consider the course of action preferred by that party. In that sense, we deem that party—here McPherson—to have forfeited the opportunity to challenge the procedures used in his hearing. *See United States v. Aguirre*, 605 F.3d 351, 356 (6th Cir. 2010).

This is not the end of the road for McPherson, however. A forfeited challenge is not foreclosed, but it does face an uphill climb, as we review it under a very deferential standard—that is, under plain-error review. Fed. R. Crim. P. 52(b); *Aguirre*, 605 F.3d at 356. Under that standard, McPherson has the burden to show (1) an error (2) that was obvious or clear, (3) that affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 732–34 (1993). As to the last of these elements, we have held that "[a]n error affects substantial rights when it 'affect[s] the outcome of the district court proceedings.'" *United States v. Inman*, 666 F.3d 1001, 1006 (6th Cir. 2012) (quoting *Olano*, 507 U.S. at 734). If all three of these elements are satisfied, an appellate court *may* exercise its discretion to remedy a forfeited error, but only if the error seriously affects the fairness, integrity, or reputation of the judicial proceedings. *United States v. Lalonde*, 509 F.3d 750, 757–58 (6th Cir. 2007).

*McPherson's due process challenge fails because his admissions were knowing and voluntary.* McPherson argues that his revocation proceeding was flawed due to the district court's failure to adhere to the requirements of Federal Rule of Criminal Procedure 32.1. Among other things, McPherson argues that he was not provided a copy of his superseding violation report, was not advised of the maximum sentence and the applicable Guidelines range, and was not advised that admitting to the additional violations would require a mandatory prison sentence. For these reasons, he says, his admissions were not knowing and voluntary.

Unlike when a defendant pleads guilty to criminal charges, and is thus entitled to a full, formal Rule 11 colloquy, an accused's admission or waiver of rights as to a supervised release violation need only be knowing and voluntary, as viewed by the totality of the circumstances. *United States v. Melton*, 782 F.3d 306, 311 (6th Cir. 2015). To assess whether an accused's admissions were knowing and voluntary, we consider a number of factors, including whether the

5

district court apprised McPherson of his Federal Rule of Criminal Procedure 32.1(b) rights and the consequences of waiving those rights, whether McPherson comprehended the claims made against him, and whether he understood his possible sentence. We do not assign "talismanic significance to any single fact or circumstance," as "each case is quite likely to be sui generis." *Id.* (quoting *United States v. Correa–Torres*, 326 F.3d 18, 23 (1st Cir. 2003)). Rule 32.1 in particular ensures that in a revocation hearing, a defendant is entitled to, among other things, written notice of the alleged violation, disclosure of the evidence, an opportunity to appear, present evidence, and question adverse witnesses, and an opportunity to make a statement and present any information in mitigation. Fed. R. Crim. P. 32.1(b)(2)(A)–(E); *United States v. Williams*, 321 F. App'x 486, 489 (6th Cir. 2009).

Under the circumstances, we see no plain error in McPherson's proceeding. McPherson was represented by counsel at both his initial appearance and his final revocation proceeding. Before his initial proceeding, McPherson and his counsel together reviewed the initial violation report, a fact the district court confirmed during the hearing. As stated in the report, McPherson could receive the statutory maximum sentence for his admitted violation of leaving his court-ordered drug treatment program. At the subsequent revocation proceeding, the Probation Officer read a list of the alleged violations aloud in open court; McPherson's counsel did not request any clarification. While that list included additional violations not included in the initial report, McPherson's maximum sentence did not increase due to the new violations. In other words, McPherson knew the full extent of his potential sentencing exposure before admitting to additional violations.

Perhaps, as McPherson contends, the government failed to give him "written notice of" these additional "alleged violation[s]" at the revocation hearing, as required by Rule 32.1(b)(2)(A).

In that respect, we note that the district court, unlike at McPherson's initial appearance, did not ask McPherson whether he had reviewed the violation report, this time, the one outlining additional violations in Willoughby Hills and Cuyahoga County. But even if McPherson was unaware of the additional violations, had he been made aware of those additional violations being added to the mix, he could only conclude that his sentence might increase, not decrease. In that sense, McPherson could not meaningfully have been caught off guard when he already knew he was possibly facing the maximum sentence. It is thus hard to see what McPherson would have done differently had he been made aware of a superseding report he purports not to have received.

Much like the defendant in *United States. v. Pippin*, McPherson contends that the record "does not reflect that he received a copy of the violation report or other notice of the revocation charges." 613 F. App'x 476, 479 (6th Cir. 2015). He likewise argues that he was not advised at the hearing that admitting to the violations in Cuyahoga County, which included his guilty plea to possession of a controlled substance and firearm charges, would result in a mandatory term of imprisonment. *See* 18 U.S.C. § 3583(g). Factually, McPherson appears to be correct. But more broadly, and of more significance, he does not claim a lack of actual knowledge of his sentencing exposure or the consequences of admitting to the new violations. As in *Pippin*, McPherson "does not argue that he would have contested his guilt of the violation," which "would be a near impossible task" in that he "had pled guilty to several new offenses." 613 F. App'x at 479–80. Indeed, *Pippin* is the harder case, as the defendant there received a consecutive sentence for his violation, despite not being notified of that possibility in advance. *Id.* at 480. Yet his sentence was upheld on plain-error review. *Id.*

We see no reason to treat McPherson differently. Even had McPherson been told in court that a violation would lead to automatic imprisonment, there is no reason to believe he could have

7

successfully challenged, on a preponderance of the evidence standard, conduct that he had previously pled guilty to in criminal proceedings. McPherson thus has not met his burden to show that any purported error affected his substantial rights by changing the outcome of the proceeding.

*McPherson's procedural reasonableness claim also fails.* McPherson asserts it was error for the district court, during McPherson's sentencing hearing, to reference pending charges against him in Willoughby Hills. As he had no opportunity to address the charges during his hearing, McPherson says it was improper for the district court to consider them in imposing his sentence.

While McPherson casts this as a substantive reasonableness challenge, we consider it more properly as a procedural reasonableness challenge, in that McPherson is alleging that the district court considered a factor in its sentencing determination that it should not have. *See, e.g.*, *United States v. Hatcher*, 947 F.3d 383, 394–95 (6th Cir. 2020) (considering comments during sentencing by district court that the defendant had committed uncharged conduct as a question of whether the district court considered an impermissible factor). To be sure, we have at times analyzed challenges alleging consideration of impermissible factors as substantive reasonableness challenges. But an intervening Supreme Court case, *Henderson v. United States*, 568 U.S. 266 (2013), "cast[s] serious doubt" on this precedent. *United States v. Frost*, 770 F. App'x 744, 744–45 (6th Cir. 2019) (quoting *United States v. Krul*, 774 F.3d 371, 381 (6th Cir. 2014) (Griffin, J., concurring)). Following *Henderson*, we more properly treat these arguments as challenging the procedural reasonableness of a sentence. Procedural reasonableness requires that the sentencing court "properly calculate the Guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (quoting *United States v. Rayyan*,

885 F.3d 436, 440 (6th Cir. 2018)); *see also United States v. Cabrera*, 811 F.3d 801, 809 (6th Cir. 2016). Because McPherson did not object when the district court referenced the pending charges, we again review his challenge for plain error. *See United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008).

1. During a revocation proceeding, the district court has some flexibility in the conduct it may consider in entering a sentence. It may consider pending charges against the defendant, conduct that has not resulted in a conviction, and even conduct for which a defendant was acquitted. *See United States v. Williams*, 214 F. App'x 552, 555 (6th Cir. 2007) (noting that it is "well-settled that relevant unconvicted conduct, even acquitted conduct, may be considered in determining a defendant's sentence" (citing *United States v. Milton*, 27 F.3d 203, 208–09 (6th Cir. 1994))); *see also United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) (en banc) (holding that "[s]o long as the defendant receives a sentence at or below the statutory ceiling . . . the district court does not abridge the defendant's right[s] . . . by looking to other facts, including acquitted conduct, when selecting a sentence within that statutory range"). But in McPherson's revocation hearing, the district court specifically prompted McPherson to address *only* the charges to which he had pled guilty in Cuyahoga County, and specifically excluded his pending charges. McPherson therefore had no opportunity to admit or deny the conduct underlying those pending charges. Basing McPherson's sentence in part on his pending charges in Willoughby Hills would thus have been in error, as McPherson had no opportunity to exercise his rights granted by Rule 32.1 as to those charges, nor does he appear to have waived those rights.

2. To prevail, McPherson has two other hurdles to clear: he must show (1) that the district court plainly or obviously considered the pending charges as a basis for its sentence; and (2) that doing so lengthened his sentence. Starting with the first requirement, the record provides some

support both for the inference that the district court did not consider the pending charges as a factor in setting McPherson's sentence, and that it did. On the one hand, the district court asked McPherson how he wished to proceed as to only the two violations to which he had pled guilty, expressly excluding the pending charges. On the other hand, when the district court explained its reasoning for the sentence it imposed, it referenced the pending charges. And those charges, in fact, may have been the basis for the court to draw negative character inferences about McPherson, including his failure to "man up" and admit to using his brother's identity. After chastising McPherson for not having his act together and remarking that McPherson's statements to the court were a "hustle," the district court then began to "summarize" McPherson's conduct, going through a litany of reasons why his conduct was particularly troublesome, twice mentioning the pending charges against him.

All of this said, we are not convinced that the district court plainly or obviously based its sentence upon the pending charges. *See, e.g.*, *Cabrera*, 811 F.3d at 809 (noting that procedural reasonableness asks whether the district court "based" its sentence upon impermissible factors). The district court cited a number of relevant sentencing factors beyond its brief references to McPherson's pending charges. Among them were McPherson's lack of effort in finding employment, his failure to make court-ordered restitution or special assessment payments, and the fact that he went "AWOL" from treatment at Oriana House, which the district court correctly characterized as a "squandered" opportunity. The district court also cited McPherson's extensive criminal history: "[c]riminal convictions dating back to age 16, 12 prior drug-related convictions. Prior adult convictions for assault twice, felonious assault, agg[ravated] rob[bery]. Having weapons while under disability twice. What else? Carrying concealed weapons. Escape, criminal damaging, and endangering. False information. Disorderly conduct, intox." It was in this context,

and only after listing a long line of violations fairly considered by the district court, that the court then added: "Obviously [McPherson] continued to be involved in criminal behavior: The pending charges, possession of crack, identity fraud, forgery, in Willoughby Municipal Court, and of course [his] recent convictions."

To be sure, upon naming the pending charges in its list of sentencing considerations, the district court used them as an example of McPherson's failure to take responsibility: "And getting back to identity fraud, lying about who you are, giving your brother's name. You can't admit that, you can't man up to that." Considering that the court had specifically excluded the pending charges (which included an identity fraud charge) from the matters about which it asked McPherson to address, this statement, at first blush, seems troubling. But keep in mind that McPherson had been convicted on other occasions of using his brother's identity. The district court was aware of this criminal history, which was included in the presentence report prepared for the court as part of McPherson's sentencing on his underlying bank fraud conviction. Such past history and characteristics of a defendant are valid considerations when revoking supervised release. *See* 18 U.S.C. § 3583(e)(1); 18 U.S.C. § 3553(a)(1). It is therefore not obvious or plain that the district court's references to identity fraud arose primarily from its consideration of McPherson's pending charges rather than earlier conduct.

3. Even if there was an error in the proceedings, McPherson has not shown that his substantial rights were affected. Doing so would require McPherson to show that any consideration by the district court of the pending charges in Willoughby Hills caused McPherson to receive a harsher sentence. To our eye, however, the district court gave more than adequate justification for an above-Guidelines sentence, aside from McPherson's pending charges. We are

thus not convinced by the record or McPherson that he would have received a lighter sentence, aside from any purported consideration of the events in Willoughby Hills.

### III. CONCLUSION

For the aforementioned reasons, we **AFFIRM** the judgment of the district court.