*252 BOGGS, Circuit Judge.
Defendant John Nesler appeals the revocation of his supervised release on the ground that he was not accorded the rights due at a revocation hearing. Based on evidence that he possessed child pornography-after his release from imprisonment, Nes-ler pleaded guilty on May 12, 2014 to violating 18 U.S.C. § 2252. On May 20, 2014, in separate proceedings, Nesler admitted to violating the terms of his supervised release and waived his right to a supervised-release-revocation hearing. In a follow-up proceeding on June 12, 2014, during which he was sentenced for the supervised-release violation, Nesler questioned some of the evidence against him. He later filed unsuccessful motions to withdraw -both pleas. We affirm the revocation of Nesler’s supervised release because the district court’s continued acceptance of Nesler’s plea and waiver at the June 12 proceeding was not plain error.
I
In 2012, Nesler was arrested for violating the same two provisions of the possession-of-child-pornography statute for which he was on supervised release. See 18 U.S.C. § 2252(a)(2), (4)(B). In that case (“the 2012 case”), Nesler pleaded guilty on May 12, 2014 to one count and the other was dropped.
Eight days later, the district court in this case held the first of two proceedings to sentence Nesler for violating the terms of his supervised release. After one of Nesler’s two counsel explained his recent guilty plea in the 2012 case, the court conducted a colloquy. Nesler affirmed that his admission to having violated the terms of his supervised release was willing, based on his factual guilt, and was not induced by promise or threat. He indicated that he understood the rights he was forgoing: “a trial [at] which [he] would be presumed innocent,” “counsel to represent [him] throughout those proceedings,” seeing, hearing, and cross-examining witnesses against him, testifying if he so desired, and presenting a defense. The court explained that the maximum sentence for his violation was 48 months of imprisonment. Nes-ler’s counsel objected, suggesting for the first time that the maximum sentence was 24 months. To “give everybody a chance to take a look at it,” the court instructed the parties to brief the issue and scheduled a follow-up proceeding.
At the second proceeding three weeks later, the court acknowledged that, in fact, Nesler’s supervised-release violation carried a mandatory minimum penalty of 5 years of imprisonment. See 18 U.S.C. § 3583(k); 42 U.S.C. §§ 16911(5)(A)(iii), 16913. Nesler then addressed the court. He voiced skepticism about some of the evidence presented against him in both his 2007 case (where he pleaded guilty, had served several years of imprisonment, and was on supervised release) and the ongoing 2012 prosecution. The court pressed the issue:
THE' COURT: Right. I mean, I hear what you’re saying.
THE DEFENDANT: I’m sorry to give you all that, but I’m just explaining.
THE COURT: It doesn’t really—
[Government]: Your Honor, my only comment would be that, of course, there’s been guilty pleas entered in all of his cases. We have put the proof on necessary to prove the violation in this case.
THE COURT: Well, the guilty plea was entered on—it was entered the ,27th [sic]. I’ve got to remember my dates here.
*253 [Government]: Something like that, your Honor. I’d have to look.
THE DEFENDANT: I been bucking ever since, even prior before that. I been trying to get someone to hear me about it.
THE COURT: And I hear what you’re saying. I’m concerned about whatever you want to bring up but whether or not there—this is something that reflects on the receipt of that guilty plea. Do you see what I’m saying? .... Because I think what you’re saying is that as to the basis in fact for the plea before Judge Anderson that you think that there—I don’t know whether you’re right or wrong about that—that you think that there are discrepancies in the evidence—
THE DEFENDANT: Yes, sir.
THE COURT:—and that there, while ... there is evidence to support your plea, there is not evidence to support all of the asserted relevant conduct. Is that what you’re saying?
THE DEFENDANT: Yes, sir. From 2007 to now.
THE COURT: Well, now anything that occurred in '2007 ... would have to have been appealed.... So, in so many ways those are not matters that we would re-examine; and that’s also been addressed in some of the papers that have been filed to the Court. To the degree that, you’re saying that ...—and I don’t quite—-I don’t think I’m hearing that but to the degree you’re saying that there’s an inadequate basis in fact for your plea before Judge Anderson, that’s something before Judge Anderson. Is that what you’re saying?
THE DEFENDANT: Yes, sir.
Turning to counsel, the court tried to clarify Nesler’s concerns. Counsel gave the impression that Nesler took issue mainly with his 2007 conviction and that there was no reason to question his guilty plea in the 2012 case or his admission at the earlier proceeding to having violated the terms of his supervised release.
The court also referred to two pro se communications that it had received from Nesler shortly before the second proceeding. Although difficult to follow, they lay out Nesler’s criticisms of the evidence in both the 2007 and 2012 cases. Among other attachments, one of the communications includes a letter from the director of Tennessee’s Consumer Assistance Program to Nesler’s counsel. It relayed Nesler’s assertion that the evidence did not connect him to all of the conduct underlying his indictments and that counsel was aiding the prosecutor by “ignoring these discrepancies.” When the court mentioned the communications, counsel averred that they felt capable of continuing to represent Nesler. The court then found Nesler guilty of violating the terms of his supervised release based on his earlier admission and sentenced him to 5 years of .imprisonment.
Toward the end of the proceeding, the court grew concerned when Nesler expressed confusion about ongoing proceedings in the concurrent case. At a sidebar, defense counsel reassured the court that despite his pro se communications, Nesler was “satisfied” with their guidance, and the government reminded the court that he had already pleaded guilty in the 2012 case. The court then asked Nesler how he felt about his attorneys. He replied, “I have talked to them, but we’re on two different roads,” and described some of the evidence from the 2007 case that he found *254 troubling. As it concluded the proceeding, the court acknowledged that Nesler “ha[d] some factual issue that may be addressed in ... proceeding^ for the 2012 case],” where he had pleaded guilty but had not yet been sentenced.
Three months after the second proceeding, Nesler filed the first of several pro se motions to withdraw his pleas in both cases. Counsel in the 2012 case later filed a motion to withdraw Nesler’s plea, which the district court denied. It noted that the motion seemed to be “a simple case of [Nesler] having second-thoughts about his decision” to plead guilty. In May 2015, the court entered a judgment based on Nes-ler’s guilty plea and sentenced him to 120 months of imprisonment. Soon afterward, the district court in this case denied Nes-ler’s motions because he had “articulated no basis for relief’ and “[t]he factual basis for th[e] guilty plea remain[ed] in place.”
II
A
Nesler contends that his admission to having violated- the terms of his supervised release was invalid and that he was denied due process when the court continued to rely on it at the second proceeding. When a defendant admits to a supervised-release violation and waives the rights to which he would be entitled at a revocation hearing, see Fed. R. Crim. P, 32.1(b), we review de novo the mixed question of law and fact whether that waiver was “knowing, intelligent, and voluntary.” United States v. Williams, 321 Fed.Appx. 486, 488-89 (6th Cir. 2009).
Yet Nesler did not preserve a claim of that error. To do so, a party must “object[ ] to the court’s action” and provide a “grounds for that objection.” Fed. R. Crim. P. 51(b). As we have stated, a defendant must “object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection.” United States v. Bostic, 371 F.3d 865, 871 (6th Cir. 2004) (quoting United States v. LeBlanc, 612 F.2d 1012, 1014 (6th Cir. 1980)). “It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.” United States v. Stewart, 628 F.3d 246, 256 (6th Cir. 2010). The specificity requirement “afford[s] the trial judge an opportunity to remedy any claimed error and ... afford[s] the government an opportunity to come forward with evidence relative to the claim.” United States v. Prater, 766 F.3d 501, 506 (6th Cir. 2014) (quoting United States v. Bryant, 480 F.2d 785, 792 (2d Cir. 1973)).
At the second proceeding, according to Nesler, he “told the court he was trying to withdraw his plea.” Appellant Br. at 5. But he does not explain why the court should have interpreted his complaints as an attempt to withdraw his waiver of the right to a revocation hearing. Nesler’s frustrations with some of the evidence in the 2007 and 2012 cases did not form an objection sufficiently specific to provide the court or the government an opportunity to address the legal point he now makes. See Bostic, 371- F.3d at 871. In fact, he accomplished the opposite when he agreed with the district court’s statement that his grievances did not challenge the “basis in fact for [his] plea” in the 2012 case. Under those circumstances, the court could not have been expected to detect an attempted withdrawal of Nesler’s earlier waiver. And when the court invited “any objections not previously raised,” defense counsel had none. See id. at 872-73. Since counsel assured the court that Nesler was satisfied with their representation and did not attempt to withdraw his earlier waiver, and Nesler’s vague misgivings with some of the evi *255 dence in the 2007 and 2012 cases did not clearly indicate otherwise, he has forfeited the issue of the validity of his waiver.
We therefore review only for plain error. See United States v. Dumas, 412 Fed.Appx. 835, 836 (6th Cir. 2011); see also United States v. Cromer, 389 F.3d 662, 672 (6th Cir. 2004) (“Plain error review applies even if the forfeited assignment of error is a constitutional error.”) The defendant bears the burden of showing an “(1) error, (2) that is plain,” United States v. Lalonde, 509 F.3d 750, 757-58 (6th Cir. 2007)—in other words, a “clear” or “obvious” error, United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The error must (3) “affect[] substantial rights. If all three conditions are met, an appellate court may exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or reputation of judicial proceedings.” Lalonde, 509 F.3d at 757-58. As we have stated the rule, “the plain error doctrine is to be used sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice.” United States v. Critton, 43 F.3d 1089, 1094 (6th Cir. 1995).
B
Although “defendants have fewer rights in parole revocation hearings than in criminal trials,” Wilkins v. Timmerman-Cooper, 512 F.3d 768, 776 (6th Cir. 2008), revocation hearings carry certain “minimum requirements of due process,” including the opportunities to “present witnesses” and to "cross-examine adverse witnesses,” Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). These rights apply with equal force at a supervised-release-revocation hearing. See United States v. Johnson, 356 Fed.Appx. 785, 791 (6th Cir. 2009); United States v. Stephenson, 928 F.2d 728, 732 (6th Cir. 1991). They are also codified in Federal Rule of Criminal Procedure 32.1, which allows the accused individual the option of “waiv[ing]” the revocation hearing and its attendant rights.
Waiver of a supervised-release-revocation hearing “need only be knowing and voluntary under the totality of the circumstances,” United States v. Melton, 782 F.3d 306, 311 (6th Cir. 2015). Examining a revocation hearing in its entirety, we must deduce whether the district court facilitated a knowing and voluntary waiver by “expos[ing] the defendant’s state of mind on the record through personal interrogation.” McCarthy v. United States, 394 U.S. 459, 467, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). As with a guilty-plea colloquy, “[a] defendant’s statements on the record ... that he or she understands the nature and the consequences” of a revocation-hearing waiver “provide strong evidence” that it was intelligent and knowing. Boyd v. Yukins, 99 Fed.Appx. 699, 703 (6th Cir. 2004). And like other constitutional rights, the due-process rights afforded at a supervised-release-revocation hearing can be waived even without an express statement to that effect. See, e.g., United States v. Lawrence, 735 F.3d 385, 437 (6th Cir. 2013) (Miranda rights); Hodge v. Haeberlin, 579 F.3d 627, 639 (6th Cir. 2009) (right to testify); United States v. Magouirk, 468 F.3d 943, 947 (6th Cir. 2006) (right to appeal a sentence).
According to Nesler, his waiver at the first proceeding was not knowing and voluntary because three weeks later, at the second proceeding, he questioned some of the evidence supporting the 2012 indictment. However genuine Nesler’s later evi-dentiary complaints may have been, they do not lead us to question whether his earlier stipulation was made knowingly and voluntarily. See id. at 312. “[WJhere the court has scrupulously followed the required procedure, the defendant is *256 bound by his statements in response to that court’s inquiry.” Baker v. United States, 781 F.2d 85, 90 (6th Cir. 1986) (quotations omitted). During the colloquy, the district court made clear to Nesler the rights that he was forfeiting by pleading guilty. See Fed. R. Crim. P 32.1(b)(1). When prompted, Nesler confirmed that his plea was voluntary and that he was “pleading guilty because [he was] ... guilty of the violation as set out in the petition.” Nesler did not explicitly state during the first proceeding that he was waiving his right to a hearing. Nonetheless, Nesler’s affirmative responses to the court’s questions during that proceeding clearly demonstrate a knowing and voluntary waiver.
That leaves the question whether intervening events at the second proceeding, considered in their totality, so undercut the “knowing and voluntary” nature of Nesler’s statements at the first proceeding that the court’s acceptance of his waiver was an obvious error. Counsel assured the court that Nesler continued to waive his right to a hearing and Nesler at one point specifically agreed that he was not challenging the sufficiency of evidence to support his guilty plea in the 2012 case. Nes-ler subsequently appeared to claim that there was “an inadequate basis in fact for [his] plea” in the 2012 case and later stated that he was not physically present at the location of some the culpable conduct on the date alleged in the indictment. Nesler also vaguely expressed disagreement with counsel’s strategy. But he also reassured the court that he would continue to cooperate with counsel. A more careful response to Nesler’s misgivings may have involved reaffirming the answers elicited during the original' colloquy. However, the totality of these circumstances shows that the court did not plainly err when it accepted Nes-ler’s admission to having violated the terms of his supervised release and waiver of his right to a revocation hearing.
As discussed, we reject Nesler’s contention that his waiver of the right to a hearing should not have been accepted on account of his rambling expression of evi-dentiary concerns regarding his 2007 conviction and his plea in the 2012 case. But nowhere does he raise the argument made in the dissent that his waiver was unknowing and involuntary because of confusion at the first hearing regarding the penalty to which he could be exposed. Accordingly, he has waived this issue on appeal. See United States v. Anderson, 695 F.3d 390, 402 (6th Cir. 2012). In any event, the tqtality of circumstances reflects that Nesler’s waiver was not made in ignorance of its consequences. Although the colloquy took place at the first hearing, Nesler was fully aware by the second hearing of the mandatory minimum penalty that his violation carried, and agreed that he was satisfied with counsel, who assured the court that Nes-ler’s vague agitations did not undermine his waiver. Although the court’s interrogation over both hearings was not the embodiment of clarity, its acceptance of the waiver was not an obvious error that affected the proceedings’ fairness.
Our holding moots Nesler’s argument that he was denied the opportunity to present and confront witnesses. By waiving the right to a revocation hearing, an individual on supervised release forgoes the “opportunity to appear,' present evidence, and question any adverse witness.” Fed. R. Crim. P. 32.1 (b)(2)(C); see also Williams, 321 Fed.Appx. at 489. The court explained at the colloquy during the first proceeding that Nesler was entitled to present evidence and cross-examine witnesses, and that by admitting to a supervised-release violation, he was abandoning those and other rights. Nesler did ask that the person who administered a polygraph test be called as a witness. Since the court *257 did not plainly err by relying on Nesler’s earlier revocation-hearing waiver, neither did it err when it did not extend to him rights that he would have had at such a hearing.
III
Nesler also asks us to consider his claim that counsel was constitutionally ineffective. Generally, a defendant may not raise a claim of ineffective assistance on direct appeal because “there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations.” United States v. Franco, 484 F.3d 347, 354 (6th Cir. 2007). In exceptional cases, however, we will entertain such claims on direct review because “the record is adequately developed to ... properly assess the merits of the issue.” United States v. Williams, 612 F.3d 500, 508 (6th Cir. 2010). This is not such a case. Nesler’s argument (that counsel acted contrary to his wishes by informing the court that he waived his right to a revocation hearing) would significantly benefit from further factual findings. Cf. United States v. Wynn, 663 F.3d 847, 850-51 (6th Cir. 2011) (record sufficiently developed when in response to motion to withdraw plea due to ineffective assistance, district court held a hearing at which both parties presented evidence on all issues later presented on appeal). Accordingly, this claim is premature and can be raised only in a post-conviction motion to vacate under 28 U.S.C. § 2255.
IV
For the reasons discussed above, we AFFIRM the district court’s order revoking supervised release.