RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0210p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MALCOLM L. HOYLE,

*Defendant-Appellant.*

Nos. 23-3977/3978

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
Nos. 14-cr-00248; 22-cr-00209—J. Philip Calabrese, District Judge.

Decided and Filed: August 6, 2025

Before: CLAY, WHITE, and DAVIS, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Alex Thomason, KERRICK BACHERT, PSC, Bowling Green, Kentucky, for Appellant. Jennifer J. King, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

DAVIS, Circuit Judge. Malcolm Hoyle pleaded guilty to being a felon in possession of a firearm and admitted that the conduct underlying that offense was a violation of a condition of his supervised release. In a joint sentencing hearing that covered both the substantive felon-in-possession charge and the follow-on supervised-release violation, the district court imposed 96 months' imprisonment for the felon-in-possession offense and 24 months for the supervised-release violation, to be served consecutively. Hoyle claims three errors. First, he contends that

he never knowingly and voluntarily waived his right to a revocation hearing for the supervised-release violation, so we should remand the case for such a hearing. Second, he argues that the district court erroneously applied the sentencing factors delineated in 18 U.S.C. § 3553(a) during his sentencing on the violation, and this misapplication of the factors led to a procedurally unreasonable sentence. Third, he asserts that his sentence on the substantive offense is also procedurally unreasonable, because the district court improperly calculated his sentencing guidelines when it erroneously gave career-offender treatment to two of his prior convictions. His first and third claims of error lack merit. But because the district court clearly considered inapplicable statutory factors in fashioning Hoyle's sentence for the supervised-release violation, we AFFIRM IN PART, REVERSE IN PART, and REMAND for further proceedings.

## I.    BACKGROUND

On December 31, 2021, Hoyle was released from custody and began a term of supervised release after completing a 96-month prison sentence for a 2015 conviction for being a felon in possession of a firearm. But less than two months after his release, on February 10, 2022, police responded to a complaint that Hoyle was threatening someone with a gun. When police arrived at the home where the incident reportedly occurred, the homeowner informed them that Hoyle was in the house with a firearm. After obtaining consent to search, officers located a Glock 19 pistol between a mattress and a box spring in one of the bedrooms. Police obtained additional eyewitness confirmation that Malcolm Hoyle was the person with the firearm, and they arrested Hoyle for possessing a Glock 19 pistol with an extended magazine.

During a post-*Miranda* interview, Hoyle admitted that he possessed the firearm and that he accidentally pointed it at someone. Officers also reviewed video surveillance from the night of the incident, which showed Hoyle holding and pointing what looked like a firearm at a car outside of the home where he was arrested. Based on these facts, Hoyle was charged in state court for the offense of possessing weapons under disability—a third-degree felony. But later, a federal grand jury indicted Hoyle for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and the state charge was dismissed. The terms of Hoyle's supervised release from his 2015 conviction barred Hoyle from committing a new crime, so the probation

department alerted the district court in that case to this potential violation after the state charges were filed, and obtained a warrant to bring Hoyle in for a violation hearing.

Hoyle appeared for a combined detention hearing and preliminary hearing, covering both his supervised-release violation for committing a new crime and the substantive § 922(g)(1) charge, to determine whether there was probable cause for each. As explained by the magistrate judge, "the evidentiary presentation [would] be the same for both" because the offense and the violation were "essentially identical." (Prelim. Hr'g, R. 54, PageID 394). Prior to the presentation of evidence, the magistrate judge and the government collectively informed Hoyle of the nature of the alleged supervised-release violation and the penalties for both the substantive offense and the violation. During the hearing, the investigating agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") testified, among other things, that Hoyle "admitted to having the gun." (*Id.* at PageID 407). The magistrate judge found that the evidence established probable cause that Hoyle committed a new crime—felon in possession of a firearm. And this finding applied to both cases.

Subsequently, Hoyle filed an unopposed motion to transfer his supervised-release case to the same judge handling the substantive offense. The motion explained that the "the violation conduct is the new case," and further advised that Hoyle would be "filing a motion of intent to plead on his new case and would like sentencing for both his SRV and the new case to be handled at the same time." (Mot. to Transfer, No. 14-CR-00248, R. 57, PageID 389). The motion was denied as moot one day later in a bench order in which the court explained that the receiving judge "previously agreed to conduct the supervised release violation hearing when he conducts the sentencing hearing" on the substantive offense. (Ct. Dkt., *United States v. Hoyle*, No. 14-CR-00248, (N.D. Ohio Apr. 27, 2023)).

The substantive offense and the violation proceeded along roughly parallel tracks, except that Hoyle pleaded guilty to the substantive offense separately, before his next appearance on the supervised-release violation. Indeed, he appeared twice for plea hearings scheduled in his § 922(g)(1) case. During the first hearing, the district court conducted a Rule 11 colloquy, during which the court informed Hoyle that a guilty plea would waive his "important constitutional

rights." (Plea Hr'g, R. 56, PageID 450). The district court also advised Hoyle that a guilty plea might affect his federal supervised release. Specifically, the district court queried:

> [D]o you understand that by pleading guilty in this case, you may be found to be in violation of your supervision in that other federal case that you have and face additional penalties, including time in prison, which may run consecutive to any time in this case?

(*Id.* at 458). Hoyle subsequently expressed reservations about his plea, telling the court that he was only "pleading guilty because [he] just want[ed] to get it over with." (*Id.* at 462). Hoyle's ambivalence led the district court to continue the hearing until a later date to ensure the plea was voluntary.

Hoyle returned to court two weeks later for a change-of-plea hearing. During this second hearing, the court again addressed the supervised-release violation in relation to the substantive felon-in-possession charge.

> [The Court]: Let me ask you this Mr. Hoyle: You understand that because you have the alleged violation of supervised release pending as well that by pleading guilty in this case you may be found to be in violation of the supervision of your other federal case?
>
> [Hoyle]: Yes, your Honor.
>
> The Court: And you understand that the penalties for any violation of that supervision may run consecutive to any penalty in this case?
>
> [Hoyle]: Yes, your Honor.
>
> The Court: And do you understand that at sentencing in this case I will take up the penalty for that alleged violation at that time?
>
> [Hoyle]: Yes, your Honor.

(Plea Hr'g, R. 52, PageID 367–68). Hoyle pleaded guilty to possessing a firearm as a felon.

A few months after Hoyle's guilty plea, the district court convened a revocation hearing for the supervised-release violation and a joint sentencing hearing for the two consolidated cases. The district court first addressed the merits of the supervised-release violation. After advising Hoyle of his right to counsel and right to remain silent, the district court asked whether Hoyle wished to admit or deny the supervised-release violation. Through counsel, Hoyle said he was prepared to admit the violation. Based on this admission, the district court found that Hoyle had

violated the condition of his supervised release prohibiting him from committing another state or federal crime. The court then advised Hoyle that he faced an advisory range of 21 to 24 months' imprisonment for the violation under the Sentencing Guidelines.

During the sentencing phase of the hearing, as to the substantive offense, the court reviewed and adopted the Presentencing Report's ("PSR's") base offense level of 26. In doing so, it applied U.S.S.G. § 2K2.1(a)(1)(A)–(B), because Hoyle possessed a semiautomatic firearm capable of accepting a large capacity magazine and had two prior felony controlled-substance offenses. Also consistent with the PSR, the court determined the total offense level was 25, after accounting for specific offense characteristics and Hoyle's acceptance of responsibility, and his criminal-history category was VI. This combination of adjusted offense level and criminal history landed Hoyle at an initial advisory Guidelines range of 110 to 137 months' imprisonment. But because the charging statute contains a ten-year maximum sentence, Hoyle's effective guideline range became 110 to 120 months' imprisonment.

Before announcing its sentence, the district court discussed several 18 U.S.C. § 3553(a) factors, including the (1) the nature and circumstances of the offense, (2) Hoyle's history and characteristics, (3) the need for the sentence imposed to serve as a deterrent and to promote respect for the law, (4) mitigating factors, (5) the kinds of sentences available, (6) sentencing disparities, and (7) restitution. But, important to Hoyle's appeal, the district court did not explicitly distinguish between which, if any, factors it applied to the § 922(g)(1) offense, which it applied to the supervised-release violation, and which it applied to both. In the end, the district court sentenced Hoyle to 96 months in prison for the felon-in-possession offense, and a consecutive term of 24 months in prison for the supervised-release violation.

## II. RULE 32.1 HEARING WAIVER

Hoyle first argues that the district court erred by implicitly concluding that he knowingly and voluntarily waived his right to a revocation hearing under Federal Rule of Criminal Procedure 32.1. He says the court did not advise him of his right to such a hearing, so he did not knowingly and voluntarily waive his Rule 32.1(b)(2) rights.

*Standard of review*.   Typically, "[w]e review a district court's revocation of supervised release for an abuse of discretion, its factual findings for clear error, and its legal conclusions *de novo*."   *United States v. Williams*, 858 F. App'x 827, 829–830 (6th Cir. 2021) (citing *United States v. Kontrol*, 554 F.3d 1089, 1091–92 (6th Cir. 2009)).   But Hoyle did not preserve this claim of error by "object[ing] with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection."   *United States v. Nesler*, 659 F. App'x 251, 254 (6th Cir. 2016) (quoting *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004)).   Therefore, we review for plain error.   *Id.* at 255.   To establish plain error, Hoyle must show that the district court (1) committed an error, (2) that was clear or obvious, and (3) which affected his substantial rights.   *United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020).   If Hoyle meets this burden, then we may reverse the error if it affected the "fairness, integrity, or public reputation of the judicial proceedings."   *Id.* (quoting *United States v. Crawford*, 943 F.3d 297, 308 (6th Cir. 2019)).

*Challenge to Waiver of Hearing.*   Hoyle asserts that the district court did not ensure that he made a knowing and voluntary waiver of his right to a revocation hearing under Rule 32.1(b)(2).   This error, he says, violated his due process rights and entitles him to a remand for the district court to conduct a revocation hearing.   The government counters that the totality of the circumstances establish that Hoyle's admission of guilt and resultant waiver of hearing was knowing and voluntary.   Therefore, says the government, there is no error to correct.   While the proceedings did not unfold in a straightforward and seamless fashion, we cannot say that the district court plainly erred in accepting as knowing and voluntary Hoyle's admission and apparent hearing waiver.

Under Federal Rule of Criminal Procedure 32.1, individuals facing revocation of their supervised release are entitled to the following:

> (A) written notice of the alleged violation; (B) disclosure of the evidence against the person; (C) an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear; (D) notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and (E) an opportunity to make a statement and present any information in mitigation."

Fed. R. Crim. P. 32.1(b)(2)(A)–(E).  A waiver is knowing and voluntary if, under the "totality of the circumstances," the reviewing court determines that (1) the lower court apprised the individual of his Rule 32.1(b) rights and the consequences of waiving those rights, (2) the individual understood the charges against him, and (3) the individual comprehended the possible sentence.  *United States v. Melton*, 782 F.3d 306, 311 (6th Cir. 2015).  In making our assessment, "[w]e do not assign talismanic significance to any single fact or circumstance."  *United States v. McPherson*, 814 F. App'x 957, 960 (6th Cir. 2020) (internal quotation marks and citation omitted).  Rather, we consider each case on its own unique facts.  *Id.*

Here, over the course of several proceedings before the magistrate judge and the district court, where Hoyle was represented by the same counsel, Hoyle was advised of his rights under Rule 32.1(b)(2) and the consequences of waiving those rights.  Hoyle was also apprised during those proceedings of the charges against him and his possible sentence.  Thus, his admission to the supervised-release violation was knowing and voluntary.  *See Melton*, 782 F.3d at 311.

At Hoyle's initial appearance on the supervised-release violation, the magistrate judge set the matter for a preliminary hearing the next week.  At that hearing, Hoyle confirmed that he had received a written copy of the violation report and confirmed that he had reviewed it with his attorney.  The report itself detailed the allegations concerning Hoyle's February 10, 2022, firearm possession and explained that, if true, his conduct was as a "New Law Violation."  (Violation Rep., R. 47, PageID 373).  It also listed the Guidelines range and advised that any sentence of imprisonment following revocation "shall be ordered to be served consecutively" to any other sentence.  (*Id.* at PageID 376).  At the preliminary hearing, before the presentation of evidence, the magistrate judge instructed the government to advise Hoyle of the potential penalty he faced for the charged supervised-release violation.  The government summarized on the record the alleged supervised-release violation and presented evidence of probable cause of the violation, and Hoyle cross-examined the government's sole witness.

Later at Hoyle's scheduled revocation hearing, the district court advised Hoyle of his right to counsel and his right to remain silent.  Hoyle confirmed that he understood these rights, and ultimately elected to admit the violation.  The district court advised Hoyle anew that his Guidelines range for the violation was 21 to 24 months and that U.S.S.G. § 7B1.3(f) indicates

that the term should be consecutive to any other sentence. In addition to the information Hoyle received at his supervised-release-related proceedings, the district court also advised Hoyle at his change-of-plea hearing on the substantive offense that the court might revoke his supervised release term should he plead guilty, and that he might face a consecutive sentence for violating his conditions of release.

True, the revocation hearing itself was abbreviated and did not retread all the ground covered in earlier proceedings. Also, the district court did not expressly ask whether Hoyle wished to waive his revocation hearing. But "the due-process rights afforded at a supervised-release-revocation hearing can be waived even without an express statement to that effect." *Nesler*, 659 F. App'x at 255. And considering all the information Hoyle had received over the course of the proceedings relating to the substantive offense and the violation, it is difficult to see how his admission of responsibility and resultant waiver of further hearing could have been anything but knowing and voluntary.

After all, Hoyle had previewed the government's evidence against him twice already: at his preliminary hearing on the violation and at the change-of-plea hearing on the substantive offense. And when he decided to plead guilty to the substantive offense, he did so after expressly acknowledging and waiving his right to trial—including the right to cross-examine witnesses against him, his right not to incriminate himself, and his right to put the government to its proofs beyond a reasonable doubt. Moreover, both the magistrate judge and the district judge informed Hoyle of his right to counsel and the potential penalties he would face if found guilty of the violation—including the possibility of a consecutive sentence.

The district court also cleared up any confusion Hoyle may have had about the consequences of admitting the firearm possession and the penalties. The district court specifically confirmed on the record that: (1) Hoyle understood that by pleading guilty in the felon-in-possession case, he could be found to be in violation of the supervision in his earlier federal case; and (2) Hoyle understood that the penalties for any violation of his supervision may run consecutive to any penalty in the felon-in-possession case. And to the extent Hoyle asserts that a more thoroughgoing revocation hearing would have allowed him the opportunity to offer mitigating information, the district court permitted him to do so at sentencing. Hoyle spoke on

his own behalf, offered his remorse, and spoke to additional factors he wanted the district court to consider when sentencing him.

For an error to be clear or obvious, it must not be "subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009).  On this record, Hoyle received all the information and opportunity to respond that he was entitled to under Rule 32.1(b)(2)(A)–(E). Thus, the district court did not clearly err in accepting that Hoyle's decision to admit responsibility and forego a hearing, after he had already pleaded guilty to the substantive offense, was knowing and voluntary.

Even were we to conclude otherwise on the question of error, we see no indication that any such error affected Hoyle's substantial rights.  An error affects substantial rights when it is "prejudicial," meaning that it "affected the outcome of the proceedings below." *United States v. Hamm*, 400 F.3d 336, 339 (6th Cir. 2005); *see also Hobbs*, 953 F.3d at 857.  A requisite prejudice showing means that Hoyle needed to demonstrate that "but for the [district court's] error," Hoyle would have denied responsibility for the violation conduct.  *Hobbs*, 953 F.3d at 857 (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)).

But here, Hoyle had pleaded guilty to the underlying § 922(g)(1) offense that wholly comprised the supervised-release violation well before the revocation hearing.  So even though his guilty plea in the separate proceeding did not affect his right to a revocation hearing, it rendered virtually nil the chance of a different outcome for the violation.  Importantly, Hoyle does not (1) dispute that his guilty plea to the substantive offense was knowing and voluntary or (2) contend that he was otherwise denied due process for the § 922(g)(1) offense.  Therefore, there was no reasonable probability of a different outcome, and he was not prejudiced.  His challenge based on his revocation proceedings fails.

### III.   PROCEDURAL REASONABLENESS

*Supervised Release Violation Sentence.*   Next, Hoyle challenges the procedural reasonableness of both of his sentences.  Regarding his sentence for the supervised-release violation, he asserts that: (1) the district court disregarded the pertinent § 3553(a) factors for the supervised-release revocation and only considered them in relation to the § 922(g)(1) offense;

(2) to the extent that the district court did assess the § 3553(a) factors, it overemphasized the wrong ones; and (3) the district court failed to adequately explain the revocation sentence and its reason for imposing consecutive sentences.

We need only assess Hoyle's second claim of error: that the district court emphasized the wrong § 3553(a) factors. Based on the Supreme Court's recent decision in *Esteras v. United States*, the district court improperly relied on retribution and punishment factors for Hoyle's supervised-release violation sentence. 606 U.S. —, 145 S. Ct. 2031 (2025).

*Standard of Review.* Typically, we review the procedural reasonableness of a sentence for abuse of discretion. *United States v. Freeman*, 640 F.3d 180, 185 (6th Cir. 2011). But the government contends that Hoyle failed to object to any purported procedural deficiency with reasonable specificity, so plain-error review should apply. *See United States v. Coleman*, 835 F.3d 606, 615 (6th Cir. 2016). Regardless, we need not resolve which standard of review applies because in the wake of *Esteras*, under any applicable standard, Hoyle's revocation sentence is procedurally unreasonable.

Procedural reasonableness focuses on the method that the district court used to arrive at the length of a sentence. *United States v. Gardner*, 32 F.4th 504, 529 (6th Cir. 2022). In assessing whether a sentence is procedurally reasonable, we consider whether the district court "properly calculate[d] the guidelines range, treat[ed] the guidelines as advisory, consider[ed] the § 3553(a) factors and adequately explain[ed] the chosen sentence—including an explanation for any variance from the guidelines range." *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008) (quoting *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008)).

First, we assess whether the district court considered appropriate § 3553(a) factors. For supervised-release violations, 18 U.S.C. § 3583(e) provides that the court is to consider a subset of the factors listed in § 3553(a). *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011). When deciding whether to revoke a term of supervised release, the court must consider "the very same subset of § 3553(a) factors" that it considers when initially determining whether to include a term of supervised release. *Esteras*, 145 S. Ct. at 2039. Specifically, the court

"must consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *Id.* (internal quotation marks and citation omitted).

Excluded from this list are § 3553(a)(2)(A) and (a)(3). Relevant here, § 3553(a)(2)(A) requires the court to take into account the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." This factor is commonly understood to address the retributive and punishment purposes of sentencing. Yet, as the Court explained in *Esteras*, those purposes relate to criminal offenses, while supervised-release violations frequently involve conduct that does not comprise a criminal offense. This mismatch in purpose, combined with Congress's exclusion of § 3553(a)(2)(A) from the list of factors contained in § 3583(c), led the Court to hold that "district courts cannot consider § 3553(a)(2)(A) when deciding whether to revoke supervised release." *Esteras*, 145 S. Ct. at 2042.

The district court here did not explicitly specify which factors it applied to the substantive offense and which ones it applied when sentencing for the supervised-release violation, which complicates our review. True, the underlying conduct for both the substantive offense and the violation was the same. And the district court did at times speak to the violation conduct in the context of a larger breach of trust with the judiciary.[1] For instance, the district court noted that Hoyle had not "delivered on [his] end of the bargain." (Sent'g Tr, R. 50, PageID 336). The court also observed that Hoyle had only been out of prison around one month before he again was arrested for possessing a firearm, and that the new § 922(g)(1) offense was the same crime for which he was placed on supervised release in the first place. But the court also spoke extensively about the seriousness of the offense—noting that Hoyle had pointed the gun at someone—and the need to promote respect for the law. These were appropriate considerations for Hoyle's sentence on the substantive offense. But *Esteras* makes clear they were not appropriate factors for Hoyle's revocation sentence. Indeed, the district court's consideration of the nature and circumstances of the offense during sentencing for a supervised-release violation

---

[1]The *Esteras* Court expressly declined to consider whether addressing the defendants' "breach of trust" remains a valid consideration for the sentencing court. 145 S. Ct. at 2040 n.5.

pertains to the underlying offense—not a new offense that comprises the violation conduct. *See Johnson*, 640 F.3d at 203.

The government concedes that the district court "primarily based its sentence on Hoyle's 'opportunity after opportunity after opportunity' to reform his conduct," and that the reference to multiple opportunities clearly pertained to Hoyle's "disrespecting the law." Appellee Br., ECF 44, 32–33 (quoting Sent'g Tr., R. 50, PageID 336). Relying on *United States v. Lewis*, 498 F.3d 393, 399 (6th Cir. 2007), the government argues that the district court could consider the need to promote respect for the law. But *Esteras* necessarily abrogated *Lewis*. So the district court's primary reliance on this improper factor was a clear error. And given the prominence of the factor in the district court's analysis, there is a reasonable probability that excluding consideration of the retributive and punishment factor would have netted Hoyle a sentence lower than the top-of-the Guidelines sentence he received. Permitting the error to stand would compromise the fairness and integrity of Hoyle's sentencing. So the district court must resentence Hoyle for his supervised-release violation, considering only the permissible factors set forth in § 3583(e).

*18 U.S.C. § 922(g)(1) Offense Sentence*. Hoyle's final procedural reasonableness claim challenges the 96-month sentence he received for the felon-in-possession offense. Hoyle contends that the district court improperly applied the career-offender enhancement. At sentencing, the court calculated Hoyle's base offense level to be 26, in part because it categorized Hoyle's prior state convictions (under Ohio Rev. Code § 2925.03(A)(2)) as controlled-substance offenses under U.S.S.G. §§ 2K2.1(a)(1) and 4B1.2(b). But as Hoyle concedes, our decision in *United States v. Smith* already determined that Ohio Rev. Code § 2925.03(A)(2) "falls safely within the . . . contours" of U.S.S.G. § 4B1.2(b)'s definition of a controlled substance offense. 960 F.3d 883, 889 (6th Cir. 2020). So the district court applied the proper controlling law when it categorized his prior state convictions as controlled substance offenses. And we can neither overrule *Smith* nor find any error here. *United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017). Accordingly, Hoyle's final procedural reasonableness challenge also fails.

**IV.    CONCLUSION**

We AFFIRM IN PART, REVERSE IN PART, and REMAND to the district court for resentencing on the revocation sentence consistent with *Esteras*.